UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NAOMI M.,[1] | 3:24-cv-01351-JR |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Russo, Magistrate Judge:

Plaintiff Naomi M., guardian for minor CKLS, brings this proceeding seeking judicial review of the Commissioner's final decision denying plaintiff's application for social security income benefits. CKLS was born in April 2007 and asserts disability beginning January 1, 2014, due to ADHD, PTSD, and respiratory arrhythmia. Tr. 50. In 2021, an Administrative Law Judge

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

(ALJ) found CKLS was not disabled. Tr. 12-29. Plaintiff appealed and in July 2023, plaintiff's case was remanded for further proceedings. Tr. 592-95. Both the plaintiff and Commissioner acknowledged that remand was appropriate because education records from another claimant had mistakenly been included in CKLS's administrative record. In November 2023, the Appeals Council instructed the ALJ to conduct a new hearing and take any further action needed to issue a new decision. Tr. 598-604.

After a second hearing on April 9, 2024, a new ALJ determined CKLS was not disabled. Tr. 516-536, 537-61. Plaintiff contends the ALJ erred by failing to properly assess the Listing and Domain criteria, improperly evaluating the medical opinion evidence and other evidence, improperly evaluating plaintiff's symptom testimony, and improperly evaluating the lay witness testimony of CKLS's guardians. Pl. Op. Br. at 2.

A.    The ALJ's Listing and Domain Criteria Evaluation

Plaintiff first argues the ALJ failed to properly evaluate CKLS's impairments under the paragraph B Listing criteria ("B criteria") identified in the regulations.[2] Specifically, plaintiff asserts the ALJ erred in finding only one marked limitation in the paragraph B criteria of the listings considered, when the record evidence supports finding more than one marked limitation. Pl.'s Br. at 2-10. The court disagrees, as the ALJ's conclusions are a reasonable reading of the record and are supported by substantial evidence.

The ALJ determined that CKLS has a marked limitation in his ability to concentrate, persist, and maintain pace, but only moderate limitations in all other paragraph B criteria. Tr. 520-

---

[2] The B Criteria for listed impairments are (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. Listing 112.00(E)(1)-(4).

21. *See* 20 C.F.R. Pt. 404 Subpt. P, App'x 1; 20 C.F.R. § 416.926. The ALJ evaluated each of the B criteria, provided sufficient explanation for his findings, and included citations to the record to support his conclusions. Tr. 521-22. For example, in evaluating CKLS's ability to understand, remember, and apply information, the ALJ found that formal academic testing, CKLS's overall academic performance, and ability to "work[] hard to bring his [failing] grades up when at risk of not meeting academic requirements to play on the school basketball team" warranted no more than a moderate limitation in this area of functioning. Tr. 521, citing Tr. 482, 747. As to CKLS's ability to interact with others, the ALJ pointed out that although he has a history of inappropriate attention seeking, more recent records show that his in-class behavior improved over time, he was able to get along with friends, and he had no issues with getting along with team members and coaches. Tr. 521, 555, 750.

Regarding the ability to adapt and manage oneself, the ALJ acknowledged CKLS had struggled with emotional dysregulation, but pointed out that plaintiff made continuous progress in this area, including learning to accept setbacks in his athletics program, engaging in group craft-making activities, and that he benefitted from medication with no side effects. Tr. 521-22. Additionally, the ALJ noted CKLS denied any concerns regarding his mental health symptoms and consistently declined offers for counseling or additional therapy. Tr. 521-22, 493. Plaintiff argues that additional evidence in the record contradicts the ALJ's conclusions, but the Court will not reverse the ALJ's decision based on plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (stating that when the evidence is susceptible to more than one rational interpretation, the court will not reverse the ALJ's decision).

Similarly, plaintiff argues the ALJ erred in evaluating whether CKLS functionally equals a listing, by finding only one marked limitation in the six domain criteria. 20 C.F.R. § 416.926a(b)(1). To functionally equal a listing, the child's impairments "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* § 416.926a(a). In assessing whether a child's impairments functionally equal a listing, the following six domains are considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for him or herself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

The ALJ evaluated CKLS's degree of limitation in the six domains of functioning, finding he had a marked limitation only in the domain of attending and completing tasks, and less than marked limitations and no limitations in the remaining domain areas. To support his conclusions, the ALJ discussed Teacher Questionnaires ("TQs") from years 2018, 2019, 2023, and 2024; CKLS's overall academic record, including grades, 504 accommodation plans, and disciplinary actions; medical evidence including CKLS's medical records, and the medical opinion evidence. Tr. 523-29.

Questionnaires provided by CKLS's teachers document inconsistent reports of CKLS's limitations. For example, his teacher in 2018 identified serious problems in attending and completing tasks and interacting and relating with others; in 2019, the same teacher identified serious problems in all areas except moving about and manipulating objects and health and physical well-being. Tr. 330-36, 346-53. In 2023, teacher Heather Hughes assessed CKLS with marked limitations in acquiring and using information and attending and completing tasks, but less than marked limitations in all other domains. Tr. 744-46. The ALJ noted Ms. Hughes commented that CKLS was "credit deficient" but was "working diligently to complete his math requirements"

and that redirection was "necessary but not excessive." Tr. 525, 746. In 2024, CKLS's teacher assessed marked limitations in acquiring and using information and in attending and completing tasks, noting he struggles "showing if he learned the information" and with "assignment completion" Tr. 753-55.

The ALJ concluded that marked or extreme limitations in the other areas of functioning were not warranted. The ALJ noted that record evidence of standardized tests showed CKLS's scores were largely within one standard deviation of the mean. Tr. 529. Indeed, standardized tests show CKLS tested at the low average to average range in most areas. Tr. 529. The ALJ pointed out that, although CKLS struggled with certain classes, he had no failing grades on his most recent report card. Tr. 529. CKLS's grades have indeed fluctuated over time, showing strengths in some subjects and weaknesses in others; but nothing in his grade fluctuations indicates he is incapable of learning. As the ALJ pointed out, when threatened with possible expulsion from his basketball team, he was able to take the necessary steps to bring his grades up and remain on the team. Tr. 747. At the hearing, CKLS testified he has no problems getting along with teammates or coaches. Moreover, as the ALJ pointed out, medical records show CKLS's symptoms were well controlled with conservative treatment "despite large gaps in treatment, no counseling, and no medication [for] ADHD." Tr. 529.

Plaintiff argues that other evidence in the record could support finding additional domains with marked limitations. Even if true, so long as the ALJ's decision is supported by substantial evidence, that decision must remain undisturbed. *Molina v. Astrue*, 674 F.3d 1104, 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)); *Schmitz v. Saul*, No. 20-35723, 2021

WL 2029187 (9th Cir. May 21, 2021) ([Plaintiff] again advocates for a different interpretation of the record, but we may not reweigh the evidence and substitute our judgment for that of the ALJ's where the ALJ's decision is supported by substantial evidence). The ALJ's conclusions are a reasonable reading of the record and substantial evidence supports his conclusions.

B.      Plaintiff's Symptom Testimony

Plaintiff argues the ALJ failed to provide clear and convincing reasons supported by substantial evidence in discounting his symptom testimony. Pl. Br. at 15-16; *see Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (an ALJ must offer clear and convincing reasons for rejecting a claimant's testimony about their symptom severity). Plaintiff states the ALJ failed to link plaintiff's testimony to any evidence discounting that testimony. Upon review, the Court finds no error in the ALJ's analysis of plaintiff's testimony. The ALJ noted plaintiff's testimony was inconsistent with the medical evidence. For example, the ALJ noted CKLS had generally normal mental status exams. Tr. 771, 778. Later records show CKLS received a benefit from a low dose of fluoxetine for depression, despite reporting that he was not taking the medication as prescribed. Tr. 772, 778. The record contains significant gaps in treatment: from early 2020 through February 2021, and again from March 2021 through July 2022. Tr. 807, 802-803. Plaintiff declined counseling and ADHD medication, despite reports that medication had helped him in the past. Tr. 802-03, 809-10.

Additionally, the ALJ noted that CKLS's academic record was inconsistent with the degree if limitation alleged in his testimony. The ALJ pointed out that CKLS's behavior and grades were described as "much improved" after he began attending weekly counseling at school. Tr. 525, 458. CKLS was able to bring his grades up to avoid being academically removed from sports, and his last report card listed a cumulative GPA of 2.23. CKLS reported having no problems with his

teammates and coach and reported that he watches movies and plays video games with friends. Tr. 524, 552. He reported playing video games, golfing, and fishing with friends as hobbies. Tr. 552. Given the medical record evidence and level of functioning described in CKLS's testimony, the ALJ's reasons for discounting the symptom testimony are discernable and free from harmful error.

C.      Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the medical opinions of Dr. Fitterer, Dr. Anderson, and Dr. Weiss. An ALJ must articulate how persuasive he finds the medical opinions in the record. 20 C.F.R. § 404.1520c(b). Factors to be considered in evaluating the persuasiveness of a medical source's opinion include supportability, consistency, the source's relationship with the claimant, and any source specialization. 20 CFR § 404.1520c(c). Although an ALJ need not articulate his consideration of all factors used to assess persuasiveness, he must at a minimum "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2).

1.  Dr. Fitterer

Plaintiff argues the ALJ erred in finding Dr. Fitterer's opinion "generally persuasive" because the opinion relied on evidence that was stricken from the record after remand from the Appeals Council. However, the ALJ redacted the evidence in question from the record and then explicitly relied only on appropriate evidence such as CKLS's mental status exams, psychological test results, academic performance, and daily activities that related to plaintiff's records for his supportability analysis. Tr. 540-41. Moreover, the ALJ acknowledged the remand order in noting that Dr. Fitterer's opinion was "partially consistent with other evidence received" after the doctor's review of CKLS's records. Tr. 528. The ALJ then assigned greater limitations than those opined by Dr. Fitterer based on the later evidence received. Tr. 528. In reviewing the ALJ's analysis, the

Court can find no evidence that the ALJ's reliance on Dr. Fitterer's opinion was improper; the ALJ was aware of the remand order, redacted the flawed evidence in question, and referred to different supportive and consistent evidence in the record in making his determination.

    2.  Dr. Anderson

Plaintiff argues the ALJ failed to properly evaluate the medical opinion of Dr. Anderson. The ALJ found Dr. Anderson's opinion unpersuasive because he "identified somewhat equivocal ratings" and failed to consider the balance of evidence when making his determination as to CKLS's limitations. Tr. 526-27. The Court agrees with the ALJ's conclusion that Dr. Anderson provided little concrete information as to how he rated CKLS's limitations. For example, when asked to rate CKLS's limitations based on the paragraph B criteria, Dr. Anderson replied, "B1 would be, I guess, I put moderate. B2 would be, in my notes I got moderate to marked… B3 would be again moderate to marked. B4 also moderate to marked." Tr. 544. That Dr. Anderson provided a limitation range for three out of four criteria is indeed, as the ALJ stated, equivocal. The difference between "moderate" and "marked" in SSA terms can quite literally mean the difference between a favorable and unfavorable disability determination; the ALJ thus appropriately disregarded such hedged and indeterminate statements from Dr. Anderson.

The ALJ then asked Dr. Anderson to translate his B criteria ratings into the six functional equivalence domains. Initially, Dr. Anderson rated CKLS's limitations in both the first and second domains as less than marked. Tr. 544. In the next breath, however, Dr. Anderson stated CKLS had "areas two and three as marked" based on the December 2018 TQ. Tr. 545. Dr. Anderson then noted that the TQ from 2019 rated domains two and three as extreme but stated

> "there's really no supportive evidence for this in the treatment records but it's very clear the statements [of] Ms. Prince, that he doesn't do homework or classwork. He blames others. And then there's poor judgment to changes in his routines. The only

> other evidence of the other side would be in [Exhibit] 7F, a psychological
> evaluation by Dr. Weiss. Who made the statement that he has shown significant
> improvement of learning. Emotionally is just one year behind his classmates. But
> then there's really no other evidence to support."

Tr. 545. From this discussion, it is unclear if Dr. Anderson agrees with either the 2018 or 2019

TQ, and thus changed his original assessment of the first two domains, or if he still considers the

first two domains less than marked. In fact, contrary to plaintiff's argument, there is no indication

Dr. Anderson provided any unequivocal ratings in his assessment. Instead, Dr. Anderson's

testimony seems to be merely a recitation of the domain ratings offered in different record exhibits,

but with no conclusions as to his own opinion. For example, when asked if he had any opinion as

to how to reconcile the difference between CKLS's "fairly benign" medical evidence and academic

records showing a different level of functioning at school, Dr. Anderson replies

> Really, I don't. I mean, there's another in [Exhibit] 29E, there's one [] recent addition to
> the records and it's another teacher questionnaire. December of '23, which was just four
> months ago. And again, you know, 1 and 2 Domains, 1 and 2 are considered to be marked.
> The rest of the 6 Domains, 3 through 6 are less than marked.

Tr. 546. Dr. Anderson's discussion provided none of the evidentiary insight an ALJ requires in

making a disability determination, and the ALJ thus reasonably discounted Dr. Anderson's opinion

as unsupported and inconsistent with the record.

    3.  Dr. Weiss

    Dr. Weiss provided a consultative examination on behalf of the Agency, but did not provide

any assessment of the functional domains related to CKLS's mental health. Tr. 478-86. The ALJ

thus did not provide any analysis as to the persuasiveness of Dr. Weiss's examination results.

Instead, the ALJ reviewed the objective testing results and clinical observations made at the

examination and concluded the "scores and academic progress made at the time of the report and

more recently" supported "moderate and less than marked limitations in most areas of

functioning." Tr. 528. Plaintiff argues the ALJ improperly made speculative inferences based on Dr. Weiss's report, but the Court disagrees. The ALJ properly considered examination results in accordance with the regulations, from which he then drew reasonable conclusions as to CKLS's limitations. 20 C.F.R. § 416.924a(a)(1) (the agency will consider all evidence in a claimant's case record, including medical evidence such as formal testing that provides information about functioning and development).

D.    Teacher Questionnaires

Plaintiff argues the ALJ improperly evaluated the TQs provided from years 2018, 2019, 2023, and 2024. Pl. Br. at 14. The regulations state that teachers and other school personnel can provide important information as to a claimant's day-to-day functioning compared to other children in the same age group who do not have impairments. 20 C.F.R. § 416.924a(a)(2)(iii). As discussed above, CKLS's teachers submitted reports showing varying assessments of his limitations over the years. Tr. 329-34, 346-53, 744-46, 753-55. Plaintiff now argues the ALJ rejected these opinions and ignored evidence that would support the degree of limitation alleged in the TQs. Pl. Br. at 15. After reviewing the record, the Court finds no error in the ALJ's analysis of the TQs.

The ALJ analyzed the TQs against the record evidence, including the medical evidence, CKLS's overall academic record, and testimony as to his daily activities. The ALJ acknowledged the teachers' assessments of marked limitations, but found that CKLS's academic record, comments by teacher Hughes, and testimony at the hearing supported a lesser degree of limitation than those opined by the teachers. The ALJ noted that CKLS obtained passing grades "without excessive redirection, lateness, or tardiness"; and his academic performance improved "when motivated by academic requirements for participation in school sports." Tr. 525. The ALJ further

noted that CKLS testified as to no difficulties with friends, peers, teammates, coaches, and teachers. Tr. 525.

The ALJ thus accepted those limitations that were supported by the record as a whole, and reasonably explained why other limitations were similarly unsupported by the record. 20 C.F.R. § 416.924a(a) (the ALJ will consider all evidence in a claimant's case record).

E.    Family Testimony

Plaintiff argues the ALJ failed to properly evaluate the lay witness testimony of CKLS's aunt and grandmother. Pl. Br. at 15. The Regulations state that parents and other caregivers can be important sources of information because they typically see the claimant on a day-to-day basis. 20 C.F.R. § 416.924a(a)(2)(i). The ALJ considered the statements submitted by CKLS's aunt and grandmother but found them "not persuasive to an effect that would warrant finding a greater degree of restriction than outlined above." Tr. 528. The ALJ then reviewed the medical and other evidence, explaining both his reasons for finding a marked limitation in the domain of attending and completing tasks, and less than marked limitations in all other domains. Tr. 528-29. Plaintiff argues no particular error in the ALJ's rejection of the testimony of the family members but instead states that "[f]or the reasons discussed above, this reasoning is unsustainable, and the ALJ erred in rejecting these consistent and supportive statements from CKLS's guardians." Pl. Br. at 15. But the Court found no error in prior sections of the ALJ's decision and finds no error in his analysis of the family testimony as well.

As such, the court concludes the ALJ sufficiently evaluated the listings and domain criteria, plaintiff's symptom testimony, the medical opinion evidence and other evidence in accordance with the regulations. Therefore, this Court finds no grounds for reversing the ALJ's decision and the Commissioner's decision is upheld

CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is

AFFIRMED. The Clerk is directed to enter a judgment accordingly.

DATED this 9th day of May, 2025.


_____/s/ Jolie A. Russo_____
JOLIE A. RUSSO
United States Magistrate Judge